*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

HAMILTON AVENUE PROPERTY HOLDINGS, LLC, STATEWIDE RECYCLING & RECOVERY, INC., RECYCLING REVOLUTION, LLC, JEFFREY SESKIN, and NATHAN SESKIN,

      Plaintiffs-Appellees,

UNPUBLISHED
July 20, 2023

v

RESNICK LAW, PC, and H. NATHAN RESNICK,

      Defendants-Appellants,

No. 360404
Wayne Circuit Court
LC No. 20-004140-NM

and

JULIE H. TREPECK HARRIS,

      Defendant.

HAMILTON AVENUE PROPERTY HOLDINGS, LLC,

      Plaintiff-Appellant/Cross-Appellee,

and

STATEWIDE RECYCLING & RECOVERY, INC., RECYCLING REVOLUTION, LLC, JEFFREY SESKIN, and NATHAN SESKIN,

      Plaintiffs-Appellants,

v

RESNICK LAW, PC, and H. NATHAN RESNICK,

No. 360606
Wayne Circuit Court
LC No. 20-004140-NM

-1-

Defendants-Appellees/Cross-
Appellants,

and

JULIE H. TREPECK HARRIS,

Defendant.

_____

Before: CAMERON, P.J., and BORRELLO and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants[2] H. Nathan Resnick and his law firm, Resnick Law, PC, appeal by leave granted the trial court's order denying their second motion for summary disposition. Plaintiffs, Hamilton Avenue Property Holdings, LLC (Hamilton), Statewide Recycling & Recovery, Inc. (Statewide Recycling), Recycling Revolution, LLC (Recycling Revolution), Jeffrey Seskin (Jeffrey), and Nathan Seskin (Nathan), appeal by leave granted the trial court's order striking the acceptance of a case evaluation award by plaintiffs Jeffrey and Statewide Recycling, and denying plaintiffs' motion for entry of judgment in favor of those plaintiffs. Defendants have filed a cross-appeal challenging the trial court's prior order denying their first motion for summary disposition. For the reasons provided below, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Jeffrey and Nathan are brothers who owned and managed the plaintiff entities. Hamilton owned a warehouse in Highland Park, Michigan. Hamilton leased space to three tenants who are not parties to this lawsuit: Quality Team 1, EcoWorks, and Helm, Inc. Hamilton also leased space to plaintiff Recycling Revolution. On February 3, 2016, a fire at the property destroyed the warehouse. The warehouse was uninsured.

In July 2016, two owners of neighboring properties, Gabrielle/MHT Limited Dividend Housing Partnership (Gabrielle) and Benjamin Manor MHT Dividend Housing Associates, LLC

_____

[1] *Hamilton Avenue Prop Holdings, LLC v Resnick Law, PC*, unpublished order of the Court of Appeals, entered July 7, 2022 (Docket Nos. 360404, 360606).

[2] Defendant Julie H. Trepeck Harris, an attorney at the Resnick law firm at the time of some of the underlying events, was also named as a defendant, but the parties agreed to dismiss any claims against her. Consequently, our use of "defendants" in this opinion will generally refer only to defendants Resnick and his law firm.

(Benjamin Manor), sued plaintiffs seeking to recover for smoke damage caused by the fire.[3] Plaintiffs hired defendants to represent them for all claims (for and against) related to the fire, including the claims brought by Gabrielle and Benjamin Manor.

Hamilton sold the property in February 2018 for $350,000, while the *Gabrielle/MHT* case was pending. At the property closing, Jeffrey was presented with a settlement statement and a closing statement, each of which described the disposition of the $350,000 sale proceeds. Relevant to this appeal, these documents allocated $230,000 for defendant law firm's attorney fees. After the listed disbursements were made, Hamilton was left with $66,465. There is no dispute that Jeffrey signed the documents on behalf of Hamilton.

On March 13, 2018, Jeffrey failed to appear for a deposition in the *Gabrielle/MHT* case. The attorney representing Gabrielle and Benjamin Manor informed Resnick that Jeffrey had informed him that he would not be attending the deposition because Jeffrey had terminated Resnick as plaintiffs' attorney. Resnick then sent an e-mail to Jeffrey and Nathan saying that as a result of this complete breakdown in the attorney-client relationship, he would be filing motions to withdraw in all cases that he was handling for plaintiffs. That same day, Resnick moved to withdraw from the *Gabrielle/MHT* case.

The next day, attorney Sheldon Miller sent a letter to Resnick, stating that he had been retained by Jeffrey, Nathan, and Hamilton "to investigate and if necessary pursue whether criminal acts, ethical violations and/or malpractice was committed in the representation of these former clients of yours." Included was a request and authorization for Resnick to supply a complete copy of the files pertaining to plaintiffs' matters.

On March 23, 2018, the trial court held a hearing on the motion to withdraw. Although Miller was unable to attend the hearing, Jeffrey was present. Jeffrey explained that he had hired Miller to take over for Resnick, but asked the trial court to deny the motion because he wanted an evidentiary hearing regarding the attorney fees owed to Resnick. Although the trial court denied the motion to withdraw at that time, the court made it clear to Resnick that he was no longer representing plaintiffs. On April 3, 2018, the trial court entered an order granting Resnick's motion to withdraw.

The *Gabrielle/MHT* case against plaintiffs proceeded with Miller as plaintiffs' attorney. In June 2018, a jury found that Hamilton, Recycling Revolution, Jeffrey, and Nathan were negligent, grossly negligent, and liable for damages. The jury further found that those four parties, plus Statewide Recycling, were liable for nuisance. The jury awarded Gabrielle damages of $6,351,183 and awarded Benjamin Manor damages of $1,040,609. The trial court entered a judgment in favor of those parties, which this Court affirmed. *Gabrielle/MHT Ltd Dividend Housing Partnership v Hamilton Avenue Prop Holding LLC*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2020 (Docket No. 346058 Docket No. 346058), p 8.

---

[3] See *Gabrielle/MHT Ltd Dividend Housing Partnership v Hamilton Avenue Prop Holding LLC*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2020 (Docket No. 346058 Docket No. 346058), p 1.

Plaintiffs filed the instant lawsuit on March 17, 2020. In their first amended complaint, plaintiffs alleged three counts: Count I–Fraud and Conversion, Count II–Malpractice Regarding Hamilton, and Count III–Malpractice Regarding all Plaintiffs. Before filing an answer, defendants moved for summary disposition. Defendants argued, among other things, that the malpractice claims were time-barred because the two-year statute of limitations period had lapsed. Specifically, defendants averred that their representation of plaintiffs ceased no later than March 14, 2018, the day they received the letter from Miller describing plaintiffs as defendants' "former clients," and therefore, plaintiffs' action was untimely filed on March 17, 2020. Plaintiffs responded that their complaint was timely because (1) Supreme Court Administrative Order No. 2020-3, 505 Mich cxxvii (2020), tolled the limitations period from March 10, 2020 through June 19, 2020, and (2) in any event, their malpractice claims accrued on March 23, 2018, when the trial court instructed defendants to not represent plaintiffs.

The trial court denied defendants' motion for summary disposition because defendants failed to adequately brief how the tolling limitations in the administrative orders affected the statute of limitations. At the hearing, plaintiffs' counsel agreed that he was abandoning any claim of malpractice predicated on Resnick failing to file a motion for summary disposition on the basis of a lack of duty.

Plaintiffs thereafter filed a second amended complaint that alleged four counts: Count I– Breach of Contract, Count II–Breach of Fiduciary Duty, Count III–Fraud and Conversion, and Count IV–Malpractice regarding Hamilton. In Count I, plaintiffs contended that defendants breached contractual obligations (1) to assess each and every opportunity to settle the *Gabrielle/MHT* case, and (2) to advise plaintiffs to arrive at a beneficial settlement rather than engage in a prolonged and protracted litigation. In Count II, plaintiffs argued that defendants breached their fiduciary duty by engaging in the acts described in Count I. For Count III, plaintiffs alleged that unknown to Jeffrey, defendant Julie H. Trepeck Harris, who worked for defendant law firm, hid a document in the closing papers that authorized the property sale proceeds to be forwarded to defendant law firm, and that defendant law firm wrongfully converted $277,409.67 from those proceeds to itself. And in Count IV, plaintiffs argued that defendants committed legal malpractice by failing to investigate and pursue claims under the various tenants' insurance policies.

Defendants thereafter moved for summary disposition under MCR 2.116(C)(10) on all of plaintiffs' claims. According to defendants, summary disposition was warranted on the legal malpractice claim in Count IV because the tenants' insurance policies did not provide coverage to Hamilton. Defendants also argued that Resnick's decision to not sue the tenants or their insurers was an exercise of attorney judgment that could not form the basis for a malpractice claim. Additionally, defendants noted that plaintiffs could not establish proximate causation because successor counsel could have sued the tenants or filed an insurance claim. Defendants argued that Counts I and II were disguised malpractice claims, which failed because there had been no settlement offers made in the *Gabrielle/MHT* case, and plaintiffs had failed to identify any simple, obvious matters that Resnick failed to stipulate to in that case. Defendants argued that plaintiffs waived the fraud and conversion claims alleged in Count III because they had agreed to dismiss defendant Harris, the person who allegedly committed the fraud, but further argued that even if the claims were not waived, they should be dismissed because the allegedly "hidden" document was not in fact hidden, false, or misleading. Moreover, Jeffrey had signed it. Defendants also

maintained that any conversion claim necessarily failed because Resnick obtained a portion of the sale proceeds with Jeffrey's consent to use those funds to pay the legitimately earned attorney fees.

The trial court denied defendants' second motion for summary disposition. Regarding the malpractice claim, the trial court ruled that there was a factual issue whether Resnick exercised reasonable judgment. The trial court denied the motion related to the conversion and fraud claims because plaintiffs would have been entitled to a hearing on the reasonableness of the fees.

Another issue on appeal involves the acceptance or denial of a case evaluation award. On August 17, 2021, the trial court entered a stipulated order canceling the case evaluation scheduled for August 23, 2021. Instead, the parties agreed to return to mediation, and also agreed that, if they did not reach a voluntary settlement in the case, the mediator would act as the sole case evaluator, with "[a]ll the requirements of MCR 2.403 regarding acceptance and rejection remain[ing] in full force and effect."

The parties failed to reach a voluntary settlement, and the mediator entered an award that provided: "The Defendants, jointly and severally, shall pay to Plaintiffs, jointly and severally, the total sum of One Hundred Five Thousand and 00/100 ($105,000.00) Dollars." Defendants accepted the award. But with regard to plaintiffs, only Statewide Recycling and Jeffrey accepted the award. Defendants moved to strike the partial acceptance. Defendants argued that because the award was contemplated as being joint and several as to all plaintiffs and defendants, there was no mechanism for some plaintiffs to accept and some to reject. Plaintiffs filed a motion for entry of judgment, contending that Jeffrey and Statewide Recycling were each entitled to a judgment for $105,000.

The trial court granted defendants' motion to strike and denied plaintiffs' motion for entry of judgment. The court noted that the award was joint and several and that plaintiffs could not separate the amounts. The court further ruled that, because it was joint and several, the award was valid only if it was accepted by all plaintiffs. These appeals followed.

## II. DEFENDANTS' ISSUES ON APPEAL AND CROSS-APPEAL

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). We also review de novo the interpretation of statutes, court rules, and administrative orders by our Supreme Court. *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 309; 901 NW2d 577 (2017); *Carter v DTN Mgt Co*, ___ Mich App ___, ___ n 1; ___ NW2d ___ (2023) (Docket No. 360772); slip op at 3.

> MCR 2.116(C)(7) allows a party to file a motion for summary disposition on the ground that a claim is barred because of the expiration of the applicable period of limitations. A movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. Moreover, the contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant. [*Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 553; 837 NW2d 244 (2013).]

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "In evaluating such a motion, a court considers the entire record in the light most favorable to the party opposing the motion, including affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties." *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). A motion under MCR (C)(10) is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Michalski v Bar-Levav*, 463 Mich 723, 730; 625 NW2d 754 (2001).

## B. COUNT IV—MALPRACTICE CLAIM

Defendants argue that the trial court erred by denying their motions for summary disposition with respect to plaintiffs' malpractice claims. We agree that some of plaintiffs' malpractice claims should have been dismissed, but hold that summary disposition was properly denied on the basis of the statute of limitations, and that defendants were not entitled to summary disposition of plaintiffs' claim that defendants committed malpractice when they failed to seek indemnification from two of Hamilton's tenants.

### 1. STATUTE OF LIMITATIONS

We first address defendants' argument raised on cross-appeal in Docket No. 360606 that the trial court erred when it denied their motion for summary disposition on the basis of the statute of limitations. At issue is whether plaintiffs timely filed this action within the applicable two-year limitations period for legal malpractice actions.

A party, generally, has two years to file a legal malpractice case from the time the action accrues.[4] MCL 600.5805(8); *Kloian v Schwartz*, 272 Mich App 232, 237; 725 NW2d 671 (2006). The accrual of a professional malpractice claim is governed by MCL 600.5838(1), which states:

> [A] claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

There is no dispute that plaintiffs filed their complaint on March 17, 2020, but the parties disagree on when the malpractice claims accrued. "Generally, when an attorney is retained to represent a client, that representation continues until the attorney is relieved of the obligation by the client or the court." *Wright v Rinaldo*, 279 Mich App 526, 534; 761 NW2d 114 (2008) (quotation marks and citation omitted). However, "no formal discharge by the client is required, and the termination of an attorney-client relationship can be implied by the actions or inactions of the client." *Estate of Mitchell v Dougherty*, 249 Mich App 668, 684; 644 NW2d 391 (2002). Indeed, "the retention of alternate counsel is sufficient proof of the client's intent to terminate the attorney's

---

[4] There is also a six-month discovery exception, see MCL 600.5838(2), but no one has argued that this exception is applicable in this case.

representation." *Id*. "This Court has also held that a client terminated his attorney's representation by sending a letter stating that the attorney did not have authority to act on his behalf." *Id*., citing *Hooper v Hill Lewis*, 191 Mich App 312, 315; 477 NW2d 114 (1991).

We assume for purposes of this analysis that plaintiffs' claim accrued on March 14, 2018. Two years past March 14, 2018 was March 14, 2020. Because March 14, 2020 was a Saturday, plaintiffs would have had until Monday, March 16, 2020 to file their complaint before the claim expired. See MCR 1.108(1). With no other considerations, plaintiffs' March 17 filing would have been untimely. However, regardless of whether the malpractice claim accrued when defendants allege it did, the claim is not time-barred because of the COVID-19 administrative orders issued by our Supreme Court.

On March 10, 2020, a state of emergency was declared due to the COVID-19 pandemic. See Executive Order No. 2020-4. A week after plaintiffs filed their complaint, the Supreme Court issued AO 2020-3 on March 23, 2020. The Supreme Court later amended AO 2020-3 on May 1, 2020.[5] AO 2020-3 provides, in pertinent part:

> For all deadlines applicable to the commencement of all civil and probate case-types, including but not limited to the deadline for the initial filing of a pleading under MCR 2.110 or a motion raising a defense or an objection to an initial pleading under MCR 2.116, and any statutory prerequisites to the filing of such a pleading or motion, *any day that falls during the state of emergency declared by the Governor related to COVID-19 is not included for purposes of MCR 1.108(1).*
>
> This order is intended to extend all deadlines pertaining to case initiation and the filing of initial responsible pleadings in civil and probate matters during the state of emergency declared by the Governor related to COVID-19. . . . [Emphasis added.]

Thus, under the plain reading of AO 2020-3, because EO 2020-4 had declared that the state of emergency started on March 10, 2020, any days during the emergency from that date on were not to be included in any statute-of-limitations calculations. See *Carter*, ___ Mich App at ___ n 1; slip op at 3.

On June 12, 2020, the Supreme Court issued AO 2020-18, which states:

> In Administrative Order No. 2020-3, the Supreme Court issued an order excluding any days that fall during the State of Emergency declared by the Governor related to COVID-19 for purposes of determining the deadline applicable to the commencement of all civil and probate case types under MCR 1.108(1).

---

[5] The May 1, 2020 amendment only added verbiage that specified that the order does not "suspend or toll any time period that must elapse before the commencement of an action or proceeding," *Carter*, ___ Mich App at ___; slip op at 2, which is not pertinent in this case. See, e.g., MCL 600.2912b(1) (providing that medical malpractice cases cannot be commenced unless notice has been provided not less than 182 days before the action is commenced).

Effective Saturday, June 20, 2020, that administrative order is rescinded, and the computation of time for those filings shall resume. For time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filing on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020. . . .

The order contained a staff comment, which provided:

Note that although the order regarding computation of days [was] entered on March 23, 2020, it excluded any day that fell during the State of Emergency declared by the Governor related to COVID-19, which order [sic] was issued on March 10, 2020. Thus, the practical effect of Administrative Order No. 2020-3 was to enable filers to exclude days beginning March 10, 2020. This timing is consistent with the executive orders entered by the Governor regarding the tolling of statutes of limitations.

Defendants take issue with the staff comment that days could be excluded starting on March 10, 2020, when the plain language of AO 2020-18 only refers to March 23, 2020. Their position is without merit because under the plain language of AO 2020-18, "[f]or time periods that started before Administrative Order No. 2020-3 took effect, the filers shall have the same number of days to submit their filing on June 20, 2020, as they had when the exclusion went into effect on March 23, 2020." As already explained, when the AO 2020-3 exclusion went into effect on March 23, 2020, it incorporated any days the state was under a state of emergency as declared by the Governor. Because the Governor had declared that the state of emergency started on March 10, 2020, any days from that date forward would not be counted for statute-of-limitations purposes. Therefore, before the exclusion went into effect, plaintiffs had until March 16, 2020, to file their complaint, which means that as of March 10, 2020, the start of the emergency, they had six days to file. Under AO 2020-18, that means plaintiffs, as of June 20, 2020, had six days remaining to file their complaint. Consequently, their filing in March 2020 was timely, and the trial court did not err by denying defendants' motion for summary disposition on statute-of-limitations grounds.

Defendants also argue that the administrative orders are unconstitutional because the Supreme Court's authority is limited to implementing procedural rules and lacks the authority to change substantive law, i.e., statutes of limitations. Defendants did not make this argument in the trial court, and we decline to address this unpreserved issue. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (stating that Michigan generally follows the "raise or waive" rule, which precludes review of an issue in a civil case unless it is preserved for appellate review); *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) (stating that a party must raise an issue in the lower court to preserve it for appellate review).

## 2. MERITS

Defendants argue in Docket No. 360404 that the trial court erred by denying their second motion for summary disposition with respect to plaintiffs' legal malpractice claims. To succeed in an action for legal malpractice, a plaintiff must prove the following elements:

(1) the existence of an attorney-client relationship;

(2) negligence in the legal representation of the plaintiff;

(3) that the negligence was a proximate cause of an injury; and

(4) the fact and extent of the injury alleged. [*Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995).]

Although plaintiffs asserted a single count alleging legal malpractice against defendants, this "claim" has a variety of aspects that require examination.

First, plaintiffs allege that defendants committed malpractice by failing to pursue recovery or reimbursement under any of the tenants' insurance policies. Defendants had argued that because Hamilton was not a named insured under any of the tenants' policies, no insurance coverage was available to Hamilton, rendering meritless any claim that defendants should have pursued such a remedy. We agree that there is no question of fact regarding this issue. In support of its motion, defendants submitted copies of Helm's, Quality Team 1's, and EcoWorks's insurance policies, none of which listed Hamilton as a named insured. In opposing the motion, plaintiffs did not provide any evidence that *any* policies existed that named Hamilton as an insured.[6] Therefore, defendants were entitled to summary disposition on this aspect of plaintiffs' malpractice claim.

Plaintiffs' malpractice claim also alleges that defendants failed to seek indemnification from the tenants, even though the tenants' leases with Hamilton required indemnification. "A right to indemnification can arise from an express contract, in which one of the parties has clearly agreed to indemnify the other." *Hubbell, Roth & Clark, Inc v Jay Dee Contractors, Inc*, 249 Mich App 288, 291; 642 NW2d 700 (2001). Therefore, it is necessary to review the indemnity provisions in the various leases.[7] Indemnity contracts are to be construed in the same fashion as regular contracts generally. *Id*. The goal is to determine the intent of the contracting parties. *Id*. When the terms of the contract are unambiguous, courts must construe and enforce the contract as written. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003).

Quality Team 1's and EcoWorks's leases contain identical provisions, which provide:

**Indemnification.** Tenant agrees to indemnify, defend and hold harmless the Landlord and its officers, members, employees, managers, representatives, successors and assigns from and against *any* liability for damages to *any* person or

---

[6] The closest was a policy issued to Quality Team 1 that named "Hamilton Avenue Investments, LLC" as an insured. In reply, defendants submitted documentary evidence showing that Hamilton Avenue Investments, LLC, is a separate and distinct entity from Hamilton Avenue Property Holdings, LLC. Consequently, there is no question of fact that none of the policies listed Hamilton as a named insured. Plaintiffs fail to explain how any of those policies—none of which name Hamilton as an insured—could lead to a recovery under those policies, and they do not allege that Quality Team 1, EcoWorks, or Helm caused the fire.

[7] Although defendants focus on whether the tenants' various insurance policies allow for indemnification, any contractual obligation by the tenants to indemnify Hamilton would necessarily arise from their leases with Hamilton.

property in, on or about the Premises from *any* cause *whatsoever.* [Emphasis added.]

This indemnification provision is very broad. But requiring Quality Team 1 and EcoWorks to indemnify Hamilton, even though Hamilton's negligence contributed to the fire and resulting damages, is not a bar to the provision's enforcement. In *Sherman v DeMaria Bldg Co, Inc*, 203 Mich App 593, 596-597; 513 NW2d 187 (1994), this Court explained:

> Michigan courts have discarded the additional rule of construction that indemnity contracts will not be construed to provide indemnification for the indemnitee's own negligence unless such an intent is expressed clearly and unequivocally in the contract. Instead, broad indemnity language may be interpreted to protect the indemnitee against its own negligence if this intent can be ascertained from other language in the contract, surrounding circumstances, or from the purpose sought to be accomplished by the parties. [Quotation marks and citations omitted.]

We conclude that the clear, unambiguous, and broad language of the indemnification provision in the leases obligated Quality Team 1 and EcoWorks to indemnify Hamilton.

The indemnification clause in Helm's lease, however, is materially different. It provides:

> Indemnification. *Tenant agrees to indemnify, defend and hold harmless the Landlord* and its officers, members, employees, managers, representatives, successors and assigns from and against any liability for damages to any person or property in, on or about the Leased Premises *from the negligent acts or omissions of Tenant, its shareholders, officers, employees or contractors.* Landlord agrees to indemnify, defend and hold harmless the Tenant and its officers, shareholders, employees, representatives, successors and assigns from and against any liability for damages to any person or property, in or about the Building and exterior common areas from the negligent acts or omissions of Landlord, its members, managers, employees or contractors. [Emphasis added.]

The scope of Helm's indemnification of Hamilton is much narrower than in the other tenants' leases. Helm only agreed to indemnify Hamilton from *Helm's* negligent acts. But there is no evidence that Helm's negligence caused or contributed to the fire, so it is not clear how plaintiffs could have sought indemnification from Helm under this provision.

Therefore, it appears that plaintiffs were entitled to seek indemnification from both Quality Team 1 and EcoWorks. There is no dispute that Resnick did not pursue that as a means of recovery. Whether the failure to do so amounts to negligence is a question of fact for the fact-finder, precluding summary disposition. See *Marietta v Cliff's Ridge, Inc*, 385 Mich 364, 370; 189 NW2d 208 (1971) ("The question of whether the defendant in fact met the standard of reasonable prudence required of him is ordinarily one for the jury[.]"); *Davis v New York Central R Co*, 348 Mich 262, 268; 83 NW2d 271 (1957) ("[A]s a general rule the question of negligence is one of fact and not of law.").

Plaintiffs' malpractice claim also alleges that defendants should have pursued breach-of-contract claims against the tenants because they failed to list Hamilton as a named insured in their policies, contrary to the requirements of the leases.

But plaintiffs have not identified any such requirement in their lease with Quality Team 1. There is no evidence that Quality Team 1 had a contractual obligation to obtain insurance and list Hamilton as a named insured, so no reasonable juror could find that it was below the standard of care to not pursue a breach-of-contract claim against Quality Team 1 on that basis. Therefore, any claim based on this theory should be dismissed under MCR 2.116(C)(10). See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (stating that to create a genuine issue of material fact to defeat a motion for summary disposition under MCR 2.116(C)(10), there must be sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor).

EcoWorks's lease, on the other hand, did require it to obtain insurance, stating:

13. **Insurance.** Tenant must maintain in effect during the Term the following insurance on the Premises: (a) *a commercial general liability insurance policy* providing coverage for the Premises, including without limitation all common areas, with policy limits of not less than $1,000,000.00 per person and $1,000,000.00 per occurrence, and (b) personal property hazard insurance covering Tenant's personal property, trade fixtures, and improvements to their full replacement cost, in an amount subject to Landlord's approval.

* * *

*Any commercial general liability policy that Tenant is required to maintain will (a) name Landlord as an additional named insured*, (b) be endorsed to provide that they will not be canceled or materially changed for any reason except on thirty (30) days prior written notice to Landlord, and (c) provide coverage to Landlord whether or not the event giving rise to the claim is alleged to have been caused in whole or in part by the acts, omissions, or negligence of Landlord. [Emphasis added.]

Helm's lease similarly provides, in pertinent part:

11. Casualty and Insurance.

* * *

G. Tenant and Landlord shall each, at its own expense, maintain a policy or policies of *comprehensive general liability insurance with respect to the particular activities of each in the Building* with the premiums thereon fully paid on or before due date. Such insurance policy shall be issued by and binding upon an insurance company reasonably approved by Landlord, and shall afford minimum protection of not less than $2,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. . . .

H. All insurance policies that Tenant is required to maintain must be written by carriers who are authorized to write insurance in the State of Michigan. *Any*

-11-

*commercial general liability policy that Tenant is required to maintain will (a) name Landlord as an additional named insured*, and (b) be endorsed to provide that they will not be canceled or materially changed for any reason except on thirty (30) days prior written notice to Landlord, provided that if Landlord is unable to obtain the endorsement in referenced in subsection (b) above, it shall not be a breach of this lease. . . . [Emphasis added.]

Therefore, the terms of Helm's and EcoWorks's leases required them to obtain general liability insurance naming Hamilton as an additional insured. Defendants do not dispute this on appeal. Instead, they argue that the failure to pursue breach-of-contract claims against the tenants was a decision made in good faith, and is therefore protected by the attorney-judgment rule. As explained in *Estate of Mitchell*, 249 Mich App at 677:

> An attorney has an implied duty to exercise reasonable skill, care, discretion, and judgment in representing a client. Further, an attorney is obligated to act as an attorney of ordinary learning, judgment, or skill would under the same or similar circumstances. However, an attorney is not a guarantor of the most favorable possible outcome, nor must an attorney exercise extraordinary diligence or act beyond the knowledge, skill, and ability ordinarily possessed by members of the legal profession. Further, where an attorney acts in good faith and in honest belief that his acts and omissions are well founded in law and are in the best interest of the client, the attorney is not answerable for mere errors in judgment. *Id*. at 658. [Brackets, quotation marks and citations omitted.]

This is sometimes referred to as the "attorney judgment rule." See *People v Trakhtenberg*, 493 Mich 38, 44-45; 826 NW2d 136 (2012).

> In their motion for summary disposition, defendants argued, in pertinent part:
>
> Resnick further reasoned that the claim against the tenants (or their insurers) was meritless because there was no allegation that the tenants did anything to cause the fire, and insurance coverage was unlikely considering that the Seskins' bad act (e.g., turning off the fire suppression system) contributed to or directly caused the fire. And, Resnick was concerned that, by filing any claim against the tenants to indemnify Hamilton Avenue, it would further expose plaintiffs' delinquencies in maintaining the property. He was concerned that the tenants (or their insurers) would counter-sue the Seskins for their role in the fire. Resnick's decision constituted an exercise of attorney judgment, which cannot for [sic] the basis for malpractice.

Notably, defendants did not submit any affidavit from Resnick, but they did submit a September 2017 research memo submitted to Resnick from an associate attorney at defendant law firm, who opined that claims against the tenants were not "particularly viable." The attorney thought that the tenants had a valid argument that Hamilton failed to properly mitigate its damages because the lease allowed Hamilton to procure insurance on its own in the event a tenant failed to do so. Defendants also submitted Resnick's deposition testimony in which he stated that he informed plaintiffs that he did not think there were "good claims" against the tenants with regard to this

-12-

issue, and that there was a strong likelihood that plaintiffs would be countersued by the tenants for causing the fire for failure to properly maintain the building.

This type of decision is protected by the attorney-judgment rule. Our Supreme Court has held that "tactical decisions do not constitute grounds for a legal malpractice action." *Simko*, 448 Mich at 660. Resnick acknowledged that there were potential claims against the tenants, but in his judgment, it was not prudent to pursue them because of the risk of plaintiffs being countersued and potentially being exposed to more liability, which outweighed any gain. This was a tactical decision insulated from malpractice liability. Therefore, summary disposition was warranted on plaintiffs' malpractice claims based on Resnick's failure to pursue breach-of-contract actions against the tenants.

However, the attorney-judgment rule does not insulate defendants from failing to seek indemnification. As discussed earlier, the indemnification obligations for two of the tenants were extremely broad. Demanding indemnification would not have exposed Hamilton to greater liability because those tenants had agreed to indemnify Hamilton for any and all liability for damages from any cause. In other words, because indemnification would potentially cover *all* of plaintiffs' damages, the decision to not pursue it cannot be viewed as "tactical." See *Estate of Mitchell*, 249 Mich App at 679 (" '[G]ross' errors in judgment can be actionable . . . .") It is a question of fact for the fact-finder whether such conduct falls below the requisite level of care.

Lastly, defendants argue that summary disposition was warranted because, even if Resnick's judgment was not sound, plaintiffs' successor counsel could have pursued any of these claims. Defendants rely on this Court's decision in *Boyle* for the proposition that a malpractice claim cannot be maintained against an attorney for failing to file an action when that attorney was replaced by other counsel before the statutory period ran on the underlying action. *Boyle v Odette*, 168 Mich App 737, 745; 425 NW2d 472 (1998). *Boyle* applies directly to plaintiffs' allegation that Resnick failed to pursue breach-of-contract claims against the tenants.

The fire that destroyed the warehouse occurred in February 2016. A breach-of-contract claim has a limitations period of six years. MCL 600.5807(9). Thus, plaintiffs had until February 2022 to file any breach-of-contract claims against the tenants. Resnick ceased representing plaintiffs in March 2018, which left any successor counsel nearly *four years* to pursue those claims. Although successor counsel had been retained initially to pursue malpractice claims against defendants, he also was retained to defend plaintiffs in the *Gabrielle/MHT* case, which was tried in June 2018. Notably, this Court held in *Boyle* that when a successor attorney had only *four months* to pursue any action before the limitations period lapsed, it relieved the prior attorney of any liability. *Boyle*, 168 Mich App at 744.[8]

---

[8] Plaintiffs observe that *Boyle* is not binding because it was decided before 1990. See MCR 7.215(J)(1). Regardless of the binding nature of *Boyle*, this Court in *Estate of Mitchell* adopted and applied the principles of *Boyle*. *Estate of Mitchell*, 249 Mich App at 682-683. Whether *Boyle* is binding is irrelevant because *Estate of Mitchell* was decided in 2002, and itself is precedentially binding under MCR 7.215(J)(1).

However, defendants did not argue before the trial court that *Boyle's* holding was a basis to dismiss plaintiffs' malpractice claim in connection with defendant's failure to seek indemnification from the tenants. In defendants' second motion for summary disposition, defendants limited their reliance on *Boyle* to plaintiffs' theory that defendants failed to pursue breach-of-contract claims against the tenants for not listing Hamilton as a named insured in their policies. Consequently, because defendants limited their argument under *Boyle* to a particular theory (failure to pursue breach-of-contract claims against tenants for not listing Hamilton as a named insured), the trial court did not err by failing to extend that argument to a different theory (failure to seek indemnification from the tenants).

In sum, the trial court erred by denying defendants' motion for summary disposition outright with respect to plaintiffs' malpractice claim. Defendants were entitled to summary disposition on (1) the claim that they committed malpractice by failing to pursue recovery or reimbursement under any of the tenants' insurance policies, and (2) the claim that they committed malpractice by failing to pursue breach-of-contract claims against the tenants. However, defendants were not entitled to summary disposition on the claim that they committed malpractice when they did not pursue indemnification from Quality Team 1 or EcoWorks.

## C. COUNTS I & II

Defendants argue that the trial court erred by failing to dismiss plaintiffs' Count I (breach of contract) and plaintiffs' Count II (breach of fiduciary duty) as duplicative of plaintiffs' other malpractice count. We agree that Counts I and II should have been dismissed, but not because there were duplicative.

Defendants first contend that these claims are malpractice claims in disguise. "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 339 (2007).

On appeal, plaintiffs concede that the claims in Counts I and II sound in legal malpractice. However, although they incorporate principles of malpractice, they are not purely duplicative of the malpractice claims asserted in Count IV. In plaintiffs' Count I (labeled breach of contract), the alleged wrongful acts include (1) failing to "assess each and every opportunity to settle litigation," (2) failing to advise plaintiffs to arrive at a beneficial settlement, and (3) failing to stipulate to issues of law and fact. In Count II, plaintiffs allege that defendants breached their fiduciary duty based on the same conduct described in Count I. These allegations are distinguishable from the allegations asserted in Count IV, which address defendants' failure to pursue remedies or claims against Hamilton's tenants. Therefore, the trial court did not err by failing to dismiss Counts I and II as "duplicative" of Count IV. However, because plaintiffs have conceded that Counts I and II are malpractice claims based on the same conduct, it is clear that, although they are not duplicative of Count IV, they are duplicative of each other. Accordingly, Count II should be dismissed as duplicative of Count I.

Furthermore, we agree with defendants that Count I should have been dismissed on the merits. When moving for summary disposition on this count, defendants argued that there were no settlement offers made in the underlying *Gabrielle/MHT* case. In opposing the motion,

plaintiffs presented no evidence to show that there had been any such offers. Likewise, defendants argued that there was no evidence of any stipulations that they failed to entertain, and plaintiffs offered no proof that any existed.[9] Accordingly, because plaintiffs failed to establish a genuine issue of material fact in support of the allegations in Count I, defendants were entitled to summary disposition on Count I.

## D. COUNT III—FRAUD CLAIM

Defendants argue that the trial court erred when it denied their motion for summary disposition on the fraud portion of plaintiff's Count III. We agree.

Initially, it is necessary to identify the type of fraud implicated in plaintiffs' claim. "There are essentially three theories to establish fraud: (1) traditional common-law fraud, (2) innocent misrepresentation, and (3) silent fraud." *M&D, Inc v WB McConkey*, 231 Mich App 22, 26-27; 585 NW2d 33 (1998). Plaintiffs' claim of fraud is based on defendants having surreptitiously included the closing disclosure document without notifying plaintiffs of its contents. Because the claim is premised on a failure to inform or disclose instead of an outright material misrepresentation, it sounds in silent fraud.

> To prove silent fraud, also known as fraudulent concealment, the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure. A plaintiff cannot merely prove that the defendant failed to disclose something; instead, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive. [*Lucas v Awaad*, 299 Mich App 345, 363-364; 830 NW2d 141 (2013) (quotation marks and citations omitted).]

There is no dispute that Jeffrey, on behalf of Hamilton, signed the settlement documents which authorized the disbursement of the proceeds from the property sale to defendant law firm, and authorized defendant law firm to retain $230,000 for fees owed. Harris testified that she disclosed the contents of the disclosure statement by reviewing them with Jeffrey line by line, noting that $230,000 of the proceeds were allocated for attorney fees. In opposing defendants' motion for summary disposition, plaintiffs attempted to show a genuine question of fact by attaching a purported affidavit from Jeffrey in which he averred that he simply signed every document presented to him without reading them, and that Harris did not inform him that $230,000 of the proceeds were being allocated toward owed attorney fees.[10] Jeffrey further claimed that, had he been informed about the content of the seller's disclosure statement, he would not have signed it. However, the "affidavit" submitted by plaintiffs is not signed or notarized. "[A]n unsworn, unsigned affidavit may not be considered by the trial court on a motion for summary

---

[9] Indeed, plaintiffs failed to offer *any* argument in their response to defendants' second motion for summary disposition related to Counts I and II.

[10] Plaintiffs also attached this same document to their response to defendants' first motion for summary disposition.

disposition." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 120; 839 NW2d 223 (2013). Therefore, this document cannot be considered.

Plaintiffs have failed to offer any competent evidence to rebut Harris's testimony that she "hid" the disclosure statement. In fact, there is evidence that she affirmatively reviewed the statement with Jeffrey by discussing its contents line by line. Therefore, plaintiffs' claim of silent fraud fails as a matter of law. See *Quinto*, 451 Mich at 362 (stating that once the moving party supports its position with documentary evidence, the burden shifts to opposing party to show through evidence that there is a genuine issue of material fact). The trial court erred by denying defendants' motion related to the fraud aspect of Count III.

## E. COUNT III—CONVERSION CLAIM

Defendants also argue that the trial court erred when it denied their motion for summary disposition with respect to plaintiffs' conversion claim in Count III. We agree.

"Conversion, both at common law and under the statute [MCL 600.2919a], is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Magley v M&W, Inc*, 325 Mich App 307, 314; 926 NW2d 1 (2018) (quotation marks and citation omitted). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 94 (1999). "The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship." *Id*. (quotation marks and citation omitted).

We agree with defendants that there is no evidence to show that their possession of the money was wrongful. Jeffrey, on behalf of Hamilton, signed the disclosure statements that authorized the sale proceeds to be wired to defendant law firm. As discussed earlier, plaintiffs offered no evidence to show that Jeffrey's consent was procured by fraud or was otherwise invalid. Therefore, defendants were entitled to summary disposition on plaintiffs' common-law conversion claim.

Although not articulated by plaintiffs, this same argument does not apply to statutory conversion, which is defined, in pertinent part, as a person being damaged as a result of "[a]nother person's stealing or *embezzling* property." MCL 600.2919a(1)(a) (emphasis added). "Embezzlement" is defined as "[t]he fraudulent taking of personal property with which one has been entrusted, esp. as a fiduciary. The criminal intent for embezzlement—unlike larceny and false pretenses—arises after taking possession (not before or during the taking)." *Black's Law Dictionary* (11th ed). Thus, whether defendants' initial possession of the money was wrongful is not controlling for statutory conversion, but the result is the same. Jeffrey authorized the funds to be transferred to defendant law firm. He also authorized the firm to retain $230,000 of Hamilton's money for attorney fees. Therefore, with plaintiffs having failed to provide any evidence showing that Jeffrey's consent and authorization were procured by fraud or was otherwise invalid, defendants were entitled to summary disposition on plaintiffs' statutory-conversion claim.

### III. PLAINTIFFS' ISSUE ON APPEAL

Plaintiffs argue that the trial court erred when it struck Jeffrey's and Statewide Recycling's acceptances of the case evaluation award. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision to strike or set aside a case evaluation acceptance for an abuse of discretion. See *Great American Ins Co v Old Republic Ins Co*, 180 Mich App 508, 510; 448 NW2d 493 (1989). A court abuses its discretion when it selects an outcome that falls outside the range of principled outcomes. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 620; 792 NW2d 344 (2010). But the proper interpretation and application of court rules is a question of law, which this Court reviews de novo. *Vandercook v Auto-Owners Ins Co*, 325 Mich App 195, 200; 923 NW2d 921 (2018).

### B. CASE EVALUATION AWARD

At the outset, we note that the parties agreed to a case evaluation procedure that does not fully comply with the court rules. MCR 2.403(D)(1) mandates that case evaluation be conducted by panels composed of three persons, but the parties stipulated to a single person conducting the evaluation in the event mediation was not successful. This is not an issue because parties are permitted to waive certain rights. See *Miller v Young*, 196 Mich 276, 284; 163 NW 27 (1917) ("[P]arties may in many ways waive rights and stipulate as to the conduct of the litigation . . . .").

When there are multiple plaintiffs or defendants as there were in this case, MCR 2.403(K)(2) provides, in pertinent part:

> [T]he evaluation must include a separate award as to each plaintiff's claim against each defendant and as to each cross-claim, counterclaim, or third-party claim that has been filed in the action. For the purpose of this subrule, all such claims filed by any one party against any other party shall be treated as a single claim.

In this case, all the plaintiffs alleged harm from Counts I and II of the second amended complaint, but only plaintiff Hamilton was implicated in Counts III and IV. Thus, separate awards should have been made for each plaintiff. Despite this requirement, the evaluator entered a single award, which provided: "The Defendants, jointly and severally, shall pay to Plaintiffs, jointly and severally, the total sum of One Hundred Five Thousand and 00/100 ($105,000.00) Dollars." Defendants accepted this award, but only two of the plaintiffs, Jeffrey and Statewide Recycling, accepted the award.

Had the evaluator followed MCR 2.403(K)(2) and issued separate awards for each plaintiff's claim against each defendant, it would have been a simple matter of each plaintiff either

accepting or rejecting its own award. MCR 2.403(L)(3) governs such instances and provides, in pertinent part:

> (3) In case evaluations involving multiple parties the following rules apply:
>
> (a) Each party has the option of accepting all of the awards covering the claims by or against that party or of accepting some and rejecting others. However, as to any particular opposing party, the party must either accept or reject the evaluation in its entirety.

Because the evaluator issued a single award as to all plaintiffs, compliance with MCR 2.403(L)(3)(a) was impossible, and the award was improper.

Notably, no party objected to the award on the basis that it was improper. In this case, the trial court determined that *all* parties had to accept the award for it to be valid because the award expressly stated it was joint and several. This ruling constitutes a principled outcome, and we will not disturb it.

"Joint and several liability" is defined as "[l]iability that may be apportioned either among two or more parties or to only one or a few select members of the group, at the adversary's discretion. Thus, each liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution or indemnity from nonpaying parties." *Black's Law Dictionary* (11th ed); see also *Velez v Tuma*, 492 Mich 1, 13; 821 NW2d 432 (2012) ("Inherent in the meaning of joint and several liability is the concept that a plaintiff's recovery is limited to one compensation for the single injury."). Because the award was joint and several as to all plaintiffs, it was impossible for the award to have any meaning if it did not bind or cover all the parties. In other words, Jeffrey and Statewide Recycling could not accept an award that would limit the liability to defendants to $105,000 across all plaintiffs. Plaintiffs wrongly claim that there is no precedent for setting aside a plaintiff's legal acceptance of a case evaluation award. Indeed, courts are allowed to set aside an acceptance of case evaluation if the failure to do so would result in "substantial injustice." *State Farm Mut Auto Ins Co v Galen*, 199 Mich App 274, 277; 500 NW2d 769 (1993). In this instance, the award was $105,000 in favor of plaintiffs, in full satisfaction of all claims. But not all the parties were involved in the judgment. Consequently, it was impossible to enforce the award because not all plaintiffs accepted the award. This is a "substantial injustice."

In sum, the award of $105,000 was for all plaintiffs, to be shared jointly and severally. If any plaintiffs had an issue with the award not comporting with MCR 2.403(K)(2), they should have objected to the form of the award. With all parties acquiescing to the award's form, which imposed a single award for all plaintiffs to share jointly and severally, it was impossible to give effect to the award when only two of the five plaintiffs accepted. Therefore, the trial court did not abuse its discretion when it struck Jeffrey's and Statewide Recycling's acceptances, particularly

when they knew or should have known that all plaintiffs needed to accept for the award to have any meaning.[11]

## IV.  CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.  The trial court properly (1) denied defendants' first motion for summary disposition on the basis of the statute of limitations, (2) denied defendants' second motion for summary disposition with regard to plaintiffs' malpractice claim premised on defendants' failure to seek indemnification from Quality Team 1 or EcoWorks, and (3) granted defendants' motion to strike Jeffrey's and Statewide Recycling's case evaluation acceptances.  The court, however, erred by denying defendants' second motion for summary disposition with regard to (1) plaintiffs' malpractice claims premised on failure to pursue breach-of-contract claims against the tenants, (2) plaintiffs' malpractice claims premised on failure to make insurance claims, (3) plaintiffs' breach-of-contract claim (Count I), (4) plaintiffs' breach-of-fiduciary-duty claim (Count II), and (5) plaintiffs' fraud and conversion claims (Count III).  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien

---

[11] Jeffrey and Statewide Recycling are concerned that, despite having accepted the case evaluation, the striking of their responses and changing the responses to denials opens them to potential case evaluation sanctions should they fail on their claims.  Since this case was filed, the court rules have been amended, see MCR 2.403, as amended December 2, 2021, 508 Mich lxxix (2021), and it is not clear whether the former version of MCR 2.403(O) would apply.  Because that issue is not before us and no case evaluation sanctions have been imposed, we decline to address or express any opinion on this issue.